UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

_____

ERIC WILSON,

               Plaintiff,

v.

UNKNOWN KELLEY, et al.,

               Defendants.

_____/

Case No. 1:24-cv-1094

Honorable Phillip J. Green

## **OPINION**

This is a civil rights action brought by a state prisoner under 42 U.S.C. § 1983. The Court will grant Plaintiff leave to proceed *in forma pauperis*. Pursuant to 28 U.S.C. § 636(c) and Rule 73 of the Federal Rules of Civil Procedure, Plaintiff consented to proceed in all matters in this action under the jurisdiction of a United States Magistrate Judge. (ECF No. 9.)

This case is presently before the Court for preliminary review under the Prison Litigation Reform Act, Pub. L. No. 104-134, 110 Stat. 1321 (1996) (PLRA), pursuant to 28 U.S.C. §§ 1915(e)(2) and 1915A(b), and 42 U.S.C. § 1997e(c). The Court is required to conduct this initial review prior to the service of the complaint. *See In re Prison Litig. Reform Act*, 105 F.3d 1131, 1131, 1134 (6th Cir. 1997); *McGore v. Wrigglesworth*, 114 F.3d 601, 604–05 (6th Cir. 1997). Service of the complaint on the named defendants is of particular significance in defining a putative defendant's relationship to the proceedings.

"An individual or entity named as a defendant is not obliged to engage in litigation unless notified of the action, and brought under a court's authority, by formal process." *Murphy Bros., Inc. v. Michetti Pipe Stringing, Inc.*, 526 U.S. 344, 347 (1999). "Service of process, under longstanding tradition in our system of justice, is fundamental to any procedural imposition on a named defendant." *Id.* at 350. "[O]ne becomes a party officially, and is required to take action in that capacity, only upon service of a summons or other authority-asserting measure stating the time within which the party served must appear and defend." *Id.* (citations omitted). That is, "[u]nless a named defendant agrees to waive service, the summons continues to function as the *sine qua non* directing an individual or entity to participate in a civil action or forgo procedural or substantive rights." *Id.* at 351. Therefore, the PLRA, by requiring courts to review and even resolve a plaintiff's claims before service, creates a circumstance where there may only be one party to the proceeding—the plaintiff—at the district court level and on appeal. *See, e.g.*, *Conway v. Fayette Cnty. Gov't*, 212 F. App'x 418 (6th Cir. 2007) ("Pursuant to 28 U.S.C. § 1915A, the district court screened the complaint and dismissed it without prejudice before service was made upon any of the defendants . . . [such that] . . . only [the plaintiff] [wa]s a party to this appeal.").

Here, Plaintiff has consented to a United States Magistrate Judge conducting all proceedings in this case under 28 U.S.C. § 636(c). That statute provides that "[u]pon the consent of the parties, a full-time United States magistrate judge . . . may conduct any or all proceedings . . . and order the entry of judgment in the case . . . ."

28 U.S.C. § 636(c).  Because the named Defendants have not yet been served, the undersigned concludes that they are not presently parties whose consent is required to permit the undersigned to conduct a preliminary review under the PLRA, in the same way they are not parties who will be served with or given notice of this opinion. *See Neals v. Norwood*, 59 F.3d 530, 532 (5th Cir. 1995) ("The record does not contain a consent from the defendants[; h]owever, because they had not been served, they were not parties to this action at the time the magistrate entered judgment.").[1]

Under the PLRA, the Court is required to dismiss any prisoner action brought under federal law if the complaint is frivolous, malicious, fails to state a claim upon which relief can be granted, or seeks monetary relief from a defendant immune from such relief.  28 U.S.C. §§ 1915(e)(2), 1915A; 42 U.S.C. § 1997e(c).  The Court must read Plaintiff's *pro se* complaint indulgently, *see Haines v. Kerner*, 404 U.S. 519, 520 (1972), and accept Plaintiff's allegations as true, unless they are clearly irrational or wholly incredible.  *Denton v. Hernandez*, 504 U.S. 25, 33 (1992).

Applying these standards, the Court will dismiss Plaintiff's complaint for failure to state a claim against Defendant Kelley.  The Court will also dismiss, for

---

[1] *But see Coleman v. Lab. & Indus. Rev. Comm'n of Wis.*, 860 F.3d 461, 471 (7th Cir. 2017) (concluding that, when determining which parties are required to consent to proceed before a United States Magistrate Judge under 28 U.S.C. § 636(c), "context matters" and the context the United States Supreme Court considered in *Murphy Bros.* was nothing like the context of a screening dismissal pursuant to 28 U.S.C. §§ 1915(e)(2) and 1915A(b), and 42 U.S.C. § 1997e(c)); *Williams v. King*, 875 F.3d 500, 503–04 (9th Cir. 2017) (relying on Black's Law Dictionary for the definition of "parties" and not addressing *Murphy Bros.*); *Burton v. Schamp*, 25 F.4th 198, 207 n.26 (3d Cir. 2022) (premising its discussion of "the term 'parties' solely in relation to its meaning in Section 636(c)(1), and . . . not tak[ing] an opinion on the meaning of 'parties' in other contexts").

failure to state a claim, the following claims against remaining Defendants Rykes, Wood, and Mahalic: (i) First Amendment retaliation claims set forth in Plaintiff's "Fourth Cause of Action," "Sixth Cause of Action," "Seventh Cause of Action," and "Ninth Cause of Action;" (ii) Eighth Amendment verbal harassment claims; and (iii) Fourteenth Amendment procedural and substantive due process claims.  Plaintiff's First Amendment retaliation claims as set forth in Plaintiff's "First Cause of Action," "Second Cause of Action," and "Third Cause of Action" against Defendants Rykes and Wood will remain in the case.  Additionally, Plaintiff's First Amendment retaliation claim as set forth in Plaintiff's "Eighth Cause of Action" against Defendant Mahalic will remain in the case.  The Court will deny Plaintiff's "motion for order for advance" (ECF No. 10).

## Discussion

### I.    Factual Allegations

Plaintiff is presently incarcerated with the Michigan Department of Corrections (MDOC) at the Ionia Correctional Facility (ICF) in Ionia, Ionia County, Michigan.  The events about which he complains occurred at that facility.  Plaintiff sues the following ICF officials: Captain Unknown Kelley; Lieutenant S. Rykes; and Officers Rebecca Wood and Mahalic. (Compl., ECF No. 1, PageID.2.)

In Plaintiff's complaint, he alleges that "[f]rom May of 2023 to November [of] 2023, Plaintiff had six fabricated misconducts written on him by Defendant Officer Wood, all of which were dismissed."[2]  (*Id.*)  Next, Plaintiff alleges that on an

---

[2] In this opinion, the Court corrects the spelling, capitalization, and punctuation in quotations from Plaintiff's complaint. Further, the Court notes that although Plaintiff

unspecified date, "[r]ight after [he] filed a grievance on Defendant Wood, Defendant . . . Rykes stopped Plaintiff on the yard and stated: 'I am getting tired of you having problems with my officers; if you do not sign off on her grievance, I will get your ass [whether] in the hole or elsewhere.'"  (*Id.*, PageID.3.)

"In September of 2023, another prisoner called Defendant Wood a bitch, [and] afterwards, she told Plaintiff Wilson she knows he did it and she threatened to get him for it in front of other officers and prisoners [whether] he did it or not."  (*Id.*)  At an unspecified time, Plaintiff "made a verbal grievance to [Defendant Wood], making her [aware] if she lied on a misconduct against him, he would be writing a grievance on her."  (*Id.*)

On September 28, 2023, Defendant Wood issued Plaintiff "a misconduct [charge] for having an altered sewed state coat."  (*Id.*)  At that time, "Plaintiff made her [aware] that the quartermaster issued him the coat in the same [condition] it's in now," explaining "you can see this coat is machine sewn and I cannot do it like that by hand."  (*Id.*)  At Plaintiff's misconduct hearing on October 9, 2023, "Plaintiff produced verified evidence showing the state coat was issued to him altered and the hearing officer even had evidence showing the coat was stitched by a machine."  (*Id.*)  During the hearing, Plaintiff also "made a verbal grievance to Defendant Lt. Rykes," the officer conducting the hearing, stating that "him and his crew of officers,

_____

makes a conclusory assertion that Defendant Wood "had six fabricated misconducts written on [Plaintiff]," Plaintiff's factual allegations do not describe six misconduct charges. As such, any intended claims premised on this conclusory, unsupported assertion would be subject to dismissal.

Defendant[s] Wood and Mahalic, were harassing him and they [were] trying to retaliate against him." (*Id.*, PageID.4.) Plaintiff said that "if [Rykes] did not do anything about it, he would be forced to file a grievance and a lawsuit on everyone because now he is on notice." (*Id.*) In response, Defendant Rykes told Plaintiff that Rykes "ran this shit and you do not come in my office talking about a grievance or lawsuit. Here is what I am going to do to you for not signing off on that grievance." (*Id.*) Defendant Rykes "then arbitrarily found Plaintiff guilty of a non-existing charge of 'destruction or misuse of state property.'" (*Id.*) Plaintiff claims that he "never had prior notice of the charge, but yet, in violation of his due process [rights], he was found guilty of a non-existing charge." (*Id.*) After the hearing, Plaintiff claims that Defendant Rykes "lied and said, 'Plaintiff was not at the hearing when he was at the hearing.'" (*Id.*) Plaintiff appealed the misconduct conviction. (*Id.*) Non-party deputy Bonn granted Plaintiff a rehearing on November 14, 2023. (*Id.*)

The next day, November 15, 2023, Defendant Rykes "intentionally received Plaintiff's rehearing" even though pursuant to policy, Defendant Rykes "was not supposed to hear Plaintiff at the rehearing because he had heard Plaintiff at the first hearing." (*Id.*, PageID.5.) Plaintiff claims that Defendant Rykes lied about the rehearing by saying that Plaintiff attended the rehearing, but Defendant Rykes "never called Plaintiff out to go to the [re]hearing." (*Id.*) On December 8, 2023, Plaintiff appealed the findings of the rehearing. (*Id.*)

Subsequently, on February 6, 2024, "Plaintiff had a re-re-hearing by Defendant Capt. Kelley." (*Id.*)  After Plaintiff told Defendant Kelley that Kelley's subordinates were "harassing [Plaintiff] and retaliating against him," Defendant Kelley stated: "I am going to fix all of this. I am finding you guilty.  Now, you keep having problems with my officers, and I am going to see you will be eating food out of a slot." (*Id.*) During the "re-re-hearing," Defendant Rykes came in the room and "called Plaintiff 'a lying bitch ass [racial slur], and threatened that him or his team will get Plaintiff in the hole.'" (*Id.*)  Defendant Kelley said that "he did not hear anything." (*Id.*)  That same day, Plaintiff filed a state civil rights action against Defendant Rykes.  (*Id.*, PageID.5–6.)

"On February 13, 2024, Plaintiff appealed the re-re-hearing misconduct [conviction] to [non-party] Deputy Bonn because Plaintiff's due process was violated when he was heard on a misconduct 40-days after the misconduct was issued." (*Id.*, PageID.6.)  Plaintiff's request for another "re-re-hearing" was subsequently denied by non-party Deputy Bonn.  (*Id.*)

On February 26, 2024, Plaintiff "accidentally dropped his I.D. card" when he "went to work at the dog program." (*Id.*)  Defendant Wood found Plaintiff's I.D. card. (*Id.*)  Plaintiff claims that Defendant Wood lied and said that Plaintiff's I.D. card "was broken with tape on it." (*Id.*)  Plaintiff further claims that Defendant Wood stated that she had seen Plaintiff "at lunch time, and she [wa]s going to write Plaintiff a misconduct." (*Id.*)  The following day, February 27, 2024, "Defendant Wood wrote

Plaintiff a misconduct stating[ that] she recognized that his I.D. card was broken during lunch the day before at the chow hall line." (*Id.*)

Thereafter, on March 21, 2024, the misconduct ticket regarding the I.D. card "was dismissed due to time constraints," and "they looked at the camera and s[aw that] Defendant Officer Wood had lied about the I.D." (*Id.*) On March 23, 2024, Defendants Wood and Rykes "threatened to get Plaintiff placed in the hole on a threatening behavior misconduct."[3] (*Id.*)

Subsequently, on May 3, 2024, Defendant Mahalic told Plaintiff to move from Unit 6 to Unit 7. (*Id.*) Later, "Plaintiff came back to the unit and ask[ed] Defendant Officer Mahalic why was [Plaintiff] being moved out [of] the dog program." (*Id.*) In response, Defendant Mahalic told Plaintiff to pack up his items and move to Unit 7. (*Id.*, PageID.6–7.) "Plaintiff made a verbal complaint" to Defendant Mahalic, stating

---

[3] The Court notes that Plaintiff identifies nine "Cause[s] of Action" for his First Amendment retaliation claims. (Compl., ECF No. 1, PageID.7–9.) Plaintiff's "Cause[s] of Action" do not specifically address the March 23, 2024, alleged threat by Defendants Wood and Rykes "to get Plaintiff placed in the hole on a threatening behavior misconduct." (*Id.*, PageID.6.) Because Plaintiff specifically identifies the nine instances of retaliation for which he brings this suit, the Court does not construe Plaintiff's complaint to raise any additional retaliation claims. And, regardless, even considering Defendants Wood's and Rykes's statement on March 23, 2024, Plaintiff alleges no facts to suggest that Defendants Wood and Rykes had any involvement in Defendant Mahalic's issuance of a class I misconduct charge for threatening behavior on May 3, 2024, and Plaintiff does not allege that he was issued any other threatening behavior misconduct tickets. (*Id.*, PageID.6–7.) Under these circumstances, any intended First Amendment retaliation claim regarding Defendants Wood's and Rykes's statement on March 23, 2024, would be subject to dismissal for failure to state a claim. *See, e.g., Frazier v. Michigan*, 41 F. App'x 762, 764 (6th Cir. 2002) (dismissing plaintiff's claims where the complaint did not allege with any degree of specificity which of the named defendants were personally involved in or responsible for each alleged violation of rights).

that he was "going to write a grievance on [Mahalic]." (*Id.*, PageID.7.)  Plaintiff claims that Defendant Mahalic retaliated against him by telling Plaintiff to "cuff up" and by taking Plaintiff "to the hole." (*Id.*)  Later that same day, non-party Sergeant Cook "came and heard Plaintiff on a class I misconduct for threatening behavior." (*Id.*) Plaintiff alleges that Defendant Mahalic claimed that Plaintiff had told Mahalic that Plaintiff "would kick [Mahalic's] ass"; however, Plaintiff states that he "never stated that to [Mahalic]." (*Id.*)  Thereafter, Plaintiff filed a grievance about Defendants Mahalic and Wood and non-party officers Kotowicz and Dalton "for harassing [Plaintiff] and retaliating against him." (*Id.*)  Plaintiff also filed a grievance about Defendant Rykes's statement that "he would get Plaintiff put in the hole with his above[-listed] team members." (*Id.*)

Based on the foregoing allegations, Plaintiff avers that Defendants violated his First Amendment rights by retaliating against him. (*Id.*, PageID.7–9.)  Additionally, the Court construes Plaintiff's complaint to raise Eighth Amendment claims and Fourteenth Amendment due process claims.  Plaintiff seeks monetary damages, as well as declaratory and injunctive relief. (*Id.*, PageID.9–10.)

## II.    "Motion for Order for Advance"

In Plaintiff's "motion for order for advance," he states that Defendant Wood "has retaliated against [him] again" and that he "has filed another grievance." (ECF No. 10, PageID.7.)  Plaintiff "ask[s] this Court to hold this case in advance until his grievance process is done, which will take 90 days." (*Id.*, PageID.7–8.)

Based on Plaintiff's request in his motion, it appears that Plaintiff is asking the Court to hold his case in "abeyance," rather than asking the Court to "advance" his case. The Court will not hold this case in abeyance for claims that are not presently before the Court regarding unspecified subsequent retaliation by Defendant Wood. Accordingly, Plaintiff's "motion for order for advance" will be denied.

## III. Failure to State a Claim

A complaint may be dismissed for failure to state a claim if it fails "to give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). While a complaint need not contain detailed factual allegations, a plaintiff's allegations must include more than labels and conclusions. *Id.*; *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."). The court must determine whether the complaint contains "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 679. Although the plausibility standard is not equivalent to a "'probability requirement,' . . . it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* at 678 (quoting *Twombly*, 550 U.S. at 556). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—that the pleader is

entitled to relief." *Id.* at 679 (quoting Fed. R. Civ. P. 8(a)(2)); *see also Hill v. Lappin*, 630 F.3d 468, 470–71 (6th Cir. 2010) (holding that the *Twombly*/*Iqbal* plausibility standard applies to dismissals of prisoner cases on initial review under 28 U.S.C. §§ 1915A(b)(1) and 1915(e)(2)(B)(ii)).

To state a claim under 42 U.S.C. § 1983, a plaintiff must allege the violation of a right secured by the federal Constitution or laws and must show that the deprivation was committed by a person acting under color of state law. *West v. Atkins*, 487 U.S. 42, 48 (1988); *Street v. Corr. Corp. of Am.*, 102 F.3d 810, 814 (6th Cir. 1996). Because § 1983 is a method for vindicating federal rights, not a source of substantive rights itself, the first step in an action under § 1983 is to identify the specific constitutional right allegedly infringed. *Albright v. Oliver*, 510 U.S. 266, 271 (1994).

## A.    First Amendment Retaliation

Plaintiff claims that Defendants retaliated against him on multiple occasions. (*See generally* Compl., ECF No. 1.)

Retaliation based upon a prisoner's exercise of his or her constitutional rights violates the Constitution. *See Thaddeus-X v. Blatter*, 175 F.3d 378, 394 (6th Cir. 1999) (en banc).  In order to set forth a First Amendment retaliation claim, a plaintiff must establish three elements: (1) he was engaged in protected conduct; (2) an adverse action was taken against him that would deter a person of ordinary firmness from engaging in that conduct; and (3) the adverse action was motivated, at least in part, by the protected conduct. *Id.*  Moreover, a plaintiff must be able to show that the exercise of the protected right was a substantial or motivating factor in the defendant's alleged retaliatory conduct. *See Smith v. Campbell*, 250 F.3d 1032, 1037

(6th Cir. 2001) (citing *Mount Healthy City Sch. Dist. Bd. of Educ. v. Doyle*, 429 U.S. 274, 287 (1977)).

In this action, Plaintiff identifies nine instances of alleged retaliation by Defendants. (*See* Compl., ECF No. 1, PageID.7–9.) The Court addresses each alleged instance in turn.[4]

### 1.     "First Cause of Action," "Second Cause of Action," and "Third Cause of Action"

Plaintiff's "First Cause of Action," "Second Cause of Action," and "Third Cause of Action" relate to his misconduct charge for an altered state coat. In Plaintiff's "First Cause of Action," Plaintiff claims that after he wrote a grievance about an unspecified issue with Defendant Wood, Defendant Rykes "threaten[ed] to get [Plaintiff] by placing him in the hole or any other way if [Plaintiff] did not sign off on the grievance." (*Id.*, PageID.7; *see id.*, PageID.3.) Plaintiff states that he "refused to sign off and was found guilty of an arbitrary misconduct [(the misconduct regarding the altered coat)] . . . ." (*Id.*, PageID.7–8.) Next, in Plaintiff's "Second Cause of Action," Plaintiff states that after he "made a verbal complaint to Defendant Officer Wood, stating that he did not call her a bitch, she retaliated against him by . . . writing a fabricated sewed coat misconduct against him." (*Id.*, PageID.8.) In Plaintiff's "Third Cause of Action," Plaintiff states that during Plaintiff's misconduct hearing for the altered state coat charge, Plaintiff informed Defendant Rykes, the hearing officer,

---

[4] Because Plaintiff specifically identifies the nine instances of retaliation for which he brings this suit, the Court does not construe Plaintiff's complaint to raise any additional retaliation claims.

that Plaintiff would file a grievance and a lawsuit if Rykes did not do anything about the harassment.  (*Id.*)  In response, Defendant Rykes told Plaintiff that Rykes "ran this shit and you do not come in my office talking about a grievance or lawsuit.  Here is what I am going to do to you for not signing off on that grievance." (*Id.*, PageID.4.) Plaintiff claims that Defendant Rykes then "arbitrarily retaliated and found [Plaintiff] guilty of Misuse or Destruction of State Property" for the altered coat.  (*Id.*, PageID.4, 8.)

At this stage of the proceedings, the Court must take Plaintiff's factual allegations as true and in the light most favorable to him.  Although Plaintiff has by no means proven his claims, the Court will not dismiss Plaintiff's First Amendment retaliation claims as set forth in Plaintiff's "First Cause of Action," "Second Cause of Action," and "Third Cause of Action" against Defendants Rykes and Wood.[5]

### 2.    "Fourth Cause of Action"

In Plaintiff's "Fourth Cause of Action," Plaintiff claims that after Defendant Rykes found Plaintiff guilty of the "Misuse or Destruction of State Property" charge for the altered state coat, Defendant Rykes "went and got Plaintiff Wilson's rehearing, so he could retaliate against [Plaintiff] by finding him guilty a second time." (*Id.*, PageID.8.)

---

[5] The Court notes that in Plaintiff's complaint, he indicates that he filed a state action against Defendant Rykes. (Compl., ECF No. 1, PageID.5–6.) Plaintiff does not indicate what claims he presented in this state lawsuit. Therefore, at this stage of the proceedings, the Court is unable to determine whether Plaintiff's state lawsuit has any preclusive effect on the present suit.

As explained below, Plaintiff's retaliation claim that is set forth in his "Fourth Cause of Action" is entirely conclusory and fails to state a claim. Plaintiff does not allege that he engaged in any protected conduct before Defendant Rykes presided over the rehearing and found Plaintiff guilty. *See Maben v. Thelen*, 887 F.3d 252, 265 (6th Cir. 2018). And, besides Plaintiff's conclusory assertion, Plaintiff alleges no facts suggesting that Defendant Rykes acted with a retaliatory motive. Instead, Plaintiff "merely [alleges] the ultimate fact of retaliation," which "is insufficient." *Murphy v. Lane*, 833 F.2d 106, 108 (7th Cir. 1987). Therefore, Plaintiff's retaliation claim, as set forth in his "Fourth Cause of Action," will be dismissed.

### 3.    "Fifth Cause of Action"

In Plaintiff's "Fifth Cause of Action," he states that Defendant Kelley "acquiesced to his subordinate's active unconstitutional behavior." (Compl., ECF No. 1, PageID.8.) Plaintiff states that during Plaintiff's "re-re-hearing" for the altered coat misconduct charge, "Plaintiff made Captain Kelley aware that his officers were harassing [Plaintiff]," and in response, Defendant Kelley stated: "I am going to fix all of this. I am finding you guilty. Now, you keep having problems with my officers, and I am going to see you will be eating food out of a slot." (*Id.*)

Although Plaintiff claims that during the "re-re-hearing" for the altered misconduct charge, he told Defendant Kelley that other officers were harassing Plaintiff, Plaintiff does not allege sufficient facts to show that this statement, which was made during a misconduct hearing, constituted a verbal complaint that would be protected conduct. That is, under the circumstances alleged by Plaintiff, simply

telling Defendant Kelley *during the misconduct hearing* that Plaintiff believed other officers were harassing him does not show that Plaintiff engaged in protected conduct.

Moreover, to the extent that Plaintiff seeks to hold Defendant Kelley liable due to his supervisory position, government officials, such as Defendant Kelley, may not be held liable for the unconstitutional conduct of their subordinates under a theory of respondeat superior or vicarious liability. *Iqbal*, 556 U.S. at 676; *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 691 (1978); *Everson v. Leis*, 556 F.3d 484, 495 (6th Cir. 2009). A claimed constitutional violation must be based upon active unconstitutional behavior. *Grinter v. Knight*, 532 F.3d 567, 575–76 (6th Cir. 2008); *Greene v. Barber*, 310 F.3d 889, 899 (6th Cir. 2002). The acts of one's subordinates are not enough, nor can supervisory liability be based upon the mere failure to act. *Grinter*, 532 F.3d at 576; *Greene*, 310 F.3d at 899; *Summers v. Leis*, 368 F.3d 881, 888 (6th Cir. 2004). Furthermore, § 1983 liability may not be imposed simply because a supervisor denied an administrative grievance or failed to act based upon information contained in a grievance. *See Shehee v. Luttrell*, 199 F.3d 295, 300 (6th Cir. 1999).

Accordingly, for these reasons, Plaintiff's First Amendment retaliation claim against Defendant Kelley as set forth in Plaintiff's "Fifth Cause of Action," will be dismissed.

### 4.    "Sixth Cause of Action"

In Plaintiff's "Sixth Cause of Action," Plaintiff claims that Defendant Rykes retaliated against him on February 6, 2024, when Defendant Rykes "stepped in the room" where Plaintiff's "re-re-hearing" was taking place and "called Plaintiff 'a lying bitch ass [racial slur], and threatened that him or his team will get Plaintiff in the

hole.'" (Compl., ECF No. 1, PageID.5, 8–9.)  Two months later, Plaintiff states that he "was in the hole." (*Id.*, PageID.9.)

As an initial matter, Plaintiff does not allege that he engaged in any protected conduct before Defendant Rykes made the threat regarding Plaintiff's placement "in the hole." (*Id.*)  Furthermore, Defendant Rykes's verbal statements and threat on February 6, 2024, do not constitute adverse actions. *See, e.g.*, *Hardy v. Adams*, No. 16-2055, 2018 WL 3559190, at *3 (6th Cir. Apr. 13, 2018) ("The alleged threat by Adams that she would make Hardy's life 'hell' is simply too vague to pass this threshold."); *Shisler v. Golladay*, No. 2:19-cv-80, 2019 WL 2590693, at *4 (W.D. Mich. June 25, 2019) (discussing that Golladay's threat that the ticket would be the least of the plaintiff's worries was "simply too vague" to support a First Amendment retaliation claim); *Dahlstrom v. Butler*, No. 2:18-cv-101, 2019 WL 91999, at *11 (W.D. Mich. Jan. 3, 2019) ("Krause's threat[--to 'get' a prisoner who files a grievance on Krause and 'steps out of line'--] is too vague and non-specific to deter a person of ordinary firmness from engaging in protected conduct.").

Moreover, although Plaintiff apparently blames Defendant Rykes for Plaintiff's placement "in the hole" more than two months after Defendant Rykes's February 6, 2024, statements, the facts alleged in the body of Plaintiff's complaint show that prior to Plaintiff being placed "in the hole," Defendant Mahalic had issued Plaintiff a class I misconduct charge on May 3, 2024. (Compl., ECF No. 1, PageID.6–7.) Therefore, the factual allegations in the complaint show that it was the issuance of this misconduct charge on May 3, 2024, that preceded Plaintiff's placement in

segregation, and Plaintiff alleges no *facts* to suggest that Defendant Rykes had any involvement in the issuance of this misconduct charge and Plaintiff's placement in segregation on May 3, 2024.  (*See id.*)  Under these circumstances, Plaintiff fails to show that Defendant Rykes retaliated against Plaintiff when Rykes made verbal threats on February 6, 2024, and when Plaintiff was placed in segregation by Defendant Mahalic on May 3, 2024.  Accordingly, Plaintiff's "Sixth Cause of Action" will be dismissed.

### 5.    "Seventh Cause of Action"

In Plaintiff's "Seventh Cause of Action," he states that every time he saw Defendant Wood, "she would state, 'I am going to get you.'"  (*Id.*, PageID.9.)  Then, on February 26, 2024, Plaintiff "accidentally dropped his I.D. card" when he "went to work at the dog program," and Defendant Wood found the I.D.  (*Id.*, PageID.6, 9.) The following day, February 27, 2024, "Defendant Wood wrote Plaintiff a misconduct stating[ that] she recognized that his I.D. card was broken during lunch the day before at the chow hall line."  (*Id.*, PageID.6.)  Plaintiff claims that Defendant Wood "lied and said, 'she identified Plaintiff Wilson at lunch on February 26, 2024,' when Defendant Wood could not have seen him because he was at work."  (*Id.*, PageID.9.)

Plaintiff's retaliation claim, as set forth in his "Seventh Cause of Action," fails to state a claim for the same reason that several of Plaintiff's other retaliation claims fail—Plaintiff fails to allege that he engaged in any protected conduct before Defendant Wood issued Plaintiff the misconduct charge regarding Plaintiff's I.D. card.  Indeed, taking Plaintiff's factual allegations as true, as the Court must do at this stage, Plaintiff's allegations suggest, at most, that Defendant Wood was

motivated by her general dislike of Plaintiff, rather than any protected conduct, when she issued the misconduct charge regarding Plaintiff's I.D. card.  Therefore, Plaintiff's "Seventh Cause of Action" fails to state a claim and will be dismissed.

6.    **"Eighth Cause of Action"**

In Plaintiff's "Eighth Cause of Action," he alleges that on May 2, 2024, Defendant Mahalic "lied" by saying that "Plaintiff was drinking and he put Plaintiff in the hole." (*Id.*, PageID.9.)  Then, Plaintiff was removed from the dog program, and Defendant Mahalic told Plaintiff to move from Unit 6 to Unit 7.  (*Id.*)  In response, Plaintiff alleges that he "made a verbal complaint" to Defendant Mahalic, stating that he was "going to write a grievance on [Mahalic]." (*Id.*, PageID.7.)  Plaintiff claims that Defendant Mahalic retaliated against him by telling Plaintiff to "cuff up" and by taking Plaintiff "to the hole." (*Id.*)  Later that same day, non-party Sergeant Cook "came and heard Plaintiff on a class I misconduct for threatening behavior." (*Id.*) Plaintiff alleges that Defendant Mahalic claimed that Plaintiff had told Mahalic that Plaintiff "would kick [Mahalic's] ass"; however, Plaintiff claims that he "never stated that to [Mahalic]."[6]  (*Id.*)

Taking Plaintiff's factual allegations as true and in the light most favorable to him, at this stage of the proceedings, the Court will not dismiss Plaintiff's First Amendment retaliation claim against Defendant Mahalic as set forth in Plaintiff's "Eighth Cause of Action."

---

[6] Plaintiff does not indicate whether he was found guilty of the class I misconduct charge for threatening behavior.

18

### 7.    "Ninth Cause of Action"

In Plaintiff's "Ninth Cause of Action," he claims that on May 13, 2024, Defendant Rykes retaliated against him when Rykes "came to the hole" and "stated, 'I told you I was going to get your Black ass in the hole.'" (*Id.*, PageID.9.)  Plaintiff's "Ninth Cause of Action" is entirely conclusory.  Plaintiff alleges no *facts* to show that Defendant Rykes had any involvement in placing Plaintiff in segregation in May of 2024.  *See Iqbal*, 556 U.S. at 676 ("[A] plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution.")  Accordingly, Plaintiff's "Ninth Cause of Action" will be dismissed for failure to state a claim.

### B.    Eighth Amendment Claims

The Court construes Plaintiff's complaint to raise an Eighth Amendment claim regarding alleged verbal harassment.  (*See e.g.*, Compl., ECF No. 1, PageID.5 (alleging that Defendant Rykes "called Plaintiff 'a lying bitch ass [racial slur]'").)

Although unprofessional, allegations of verbal harassment by prison officials toward an inmate do not constitute punishment within the meaning of the Eighth Amendment.  *Ivey v. Wilson*, 832 F.2d 950, 955 (6th Cir. 1987) (per curiam).  Additionally, allegations of verbal harassment do not rise to the level of unnecessary and wanton infliction of pain proscribed by the Eighth Amendment.  *See id.*; *see Johnson v. Dellatifa*, 357 F.3d 539, 546 (6th Cir. 2004) (holding that harassment and verbal abuse do not constitute the type of infliction of pain that the Eighth Amendment prohibits).

Accordingly, Plaintiff fails to state an Eighth Amendment claim premised on verbal harassment.

### C.    Fourteenth Amendment Due Process Claims

#### 1.    Procedural Due Process

The Court also construes Plaintiff's complaint to raise Fourteenth Amendment procedural due process claims regarding his misconduct charges and the alleged violation of prison policy.

"The Fourteenth Amendment protects an individual from deprivation of life, liberty or property, without due process of law." *Bazzetta v. McGinnis*, 430 F.3d 795, 801 (6th Cir. 2005). The elements of a procedural due process claim are (1) a life, liberty, or property interest requiring protection under the Due Process Clause, and (2) a deprivation of that interest (3) without adequate process. *Women's Med. Prof'l Corp. v. Baird*, 438 F.3d 595, 611 (6th Cir. 2006). "Without a protected liberty or property interest, there can be no federal procedural due process claim." *Experimental Holdings, Inc. v. Farris*, 503 F.3d 514, 519 (6th Cir. 2007) (citing *Bd. of Regents of State Colleges v. Roth*, 408 U.S. 564, 579 (1972)).

The Supreme Court long has held that the Due Process Clause does not protect every change in the conditions of confinement having an impact on a prisoner. *See Meachum v. Fano*, 427 U.S. 215, 225 (1976). In *Sandin v. Conner*, the Supreme Court set forth the standard for determining when a state-created right creates a federally cognizable liberty interest protected by the Due Process Clause. 515 U.S. 472, 484 (1995). According to that Court, a prisoner is entitled to the protections of due process only when the sanction "will inevitably affect the duration of his sentence" or when a

deprivation imposes an "atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." *Id.* at 486–87; *see also Jones v. Baker*, 155 F.3d 810, 812 (6th Cir. 1998); *Rimmer-Bey v. Brown*, 62 F.3d 789, 790–91 (6th Cir. 1995). Without a protected liberty interest, a plaintiff cannot successfully claim that his due process rights were violated because "[p]rocess is not an end in itself." *Olim v. Wakinekona*, 461 U.S. 238, 250 (1983). For example, in *Sandin*, the Court held that regardless of the mandatory language of the prison regulations, the inmate did not have a liberty interest because his placement in administrative segregation did not constitute an atypical and significant hardship within the context of his prison life. *Sandin*, 515 U.S. at 484; *see also Mackey v. Dyke*, 111 F.3d 460, 463 (6th Cir. 1997).

Here, Plaintiff alleges that he was placed in the segregation unit and he was issued a class I misconduct ticket in May of 2024. (Compl., ECF No. 1, PageID.7.) As to Plaintiff's misconduct charges for an altered state coat and a damaged I.D. card, Plaintiff does not indicate what, if any, sanctions he received as a result of the charges. Regardless, as explained below, Plaintiff cannot allege a deprivation that would inevitably affect the duration of his sentence, and he has not alleged that he suffered an "atypical and significant" deprivation. *Sandin*, 515 U.S. at 484.

As to the first category—the existence of a deprivation that will inevitably affect the duration of a prisoner's sentence—Plaintiff cannot allege that any class I or class II misconduct conviction resulted in any loss of good-time credits, and therefore, he cannot not show that the protections of the Due Process Clause are

triggered.  The United States Court of Appeals for the Sixth Circuit has examined Michigan statutory law, as it relates to the creation and forfeiture of disciplinary credits[7] for prisoners, such as Plaintiff, convicted of crimes occurring after April 1, 1987.    *See* MDOC Tracking Information System (OTIS), https://mdocweb.state.mi.us/otis2/otis2profile.aspx?mdocNumber=717304 (last visited Dec. 20, 2024).  In *Thomas v. Eby*, 481 F.3d 434 (6th Cir. 2007), the Sixth Circuit determined that loss of disciplinary credits due to a class I misconduct conviction does not necessarily affect the duration of a prisoner's sentence.  Rather, it merely affects parole eligibility, which remains discretionary with the parole board.  *Id.* at 440.  Building on this ruling, in *Nali v. Ekman*, the Sixth Circuit held that a misconduct citation in the Michigan prison system does not affect a prisoner's constitutionally protected liberty interests, because it does not necessarily affect the length of confinement.  355 F. App'x 909, 912 (6th Cir. 2009); *accord Taylor v. Lantagne*, 418 F. App'x 408, 412 (6th Cir. 2011).

As to the second category, Plaintiff has not alleged that he suffered an "atypical and significant" deprivation.  *Sandin*, 515 U.S. at 484.  In *Sandin*, the Supreme Court concluded that placement in segregation for 30 days did not impose an atypical and significant hardship.  *Id.*  Similarly, the Sixth Circuit has held that placement in administrative segregation for two months does not require the protections of due process.  *See Joseph v. Curtin*, 410 F. App'x 865, 868 (6th Cir. 2010) (finding that 61

---

[7] For crimes committed after April 1, 1987, Michigan prisoners earn "disciplinary credits" under a statute that abolished the former good-time system. Mich. Comp. Laws § 800.33(5).

days in segregation is not atypical and significant).  Instead, generally only periods of segregation lasting for several years or more have been found to be atypical and significant.  *See, e.g., Selby v. Caruso*, 734 F.3d 554, 559 (6th Cir. 2013) (concluding that thirteen years of segregation implicates a liberty interest); *Harris v. Caruso*, 465 F. App'x 481, 484 (6th Cir. 2012) (finding that eight years of segregation implicates a liberty interest); *Harden-Bey v. Rutter*, 524 F.3d 789, 795 (6th Cir. 2008) (remanding to the district court to consider whether the plaintiff's allegedly "indefinite" period of segregation, i.e., three years without an explanation from prison officials, implicates a liberty interest).  In his complaint, Plaintiff fails to allege any facts to show that he was placed in segregation for an extended period of time.

Further, if confinement in segregation does not implicate a protected liberty interest, it follows that any loss of privileges that Plaintiff incurred as a result of his misconduct convictions did not implicate such an interest.  *Cf. Bazzetta*, 430 F.3d at 805 (concluding that a permanent, but reviewable, loss of visitation privileges did not "rise[] to the level of egregious conduct necessary to implicate the implicit guarantees of the Due Process Clause" (citing *Overton v. Bazzetta*, 539 U.S. 126, 134 (2003))); *Argue v. Hofmeyer*, 80 F. App'x 427, 429 (6th Cir. 2003) (finding that prisoners have no constitutional right to rehabilitation, education, or jobs).

Moreover, as to Plaintiff's claim that Defendants' various actions violated prison policy, courts routinely have recognized that a prisoner does not enjoy any federally protected liberty or property interest in state procedure.  *See Olim*, 461 U.S. at 250; *Laney v. Farley*, 501 F.3d 577, 581 n.2 (6th Cir. 2007); *Brody v. City of Mason*,

250 F.3d 432, 437 (6th Cir. 2001).  Thus, to the extent that Plaintiff claims that Defendants violated prison policy, Plaintiff fails to raise a cognizable federal claim.

Accordingly, for all of the foregoing reasons, Plaintiff fails to state a Fourteenth Amendment procedural due process claim.

## 2.    Substantive Due Process

To the extent that Plaintiff intended to raise a substantive due process claim regarding Defendants' conduct, as explained below, he fails to state such a claim.

"Substantive due process . . . serves the goal of preventing governmental power from being used for purposes of oppression, regardless of the fairness of the procedures used." *Pittman v. Cuyahoga Cnty. Dep't of Child. & Fam. Servs.*, 640 F.3d 716, 728 (6th Cir. 2011) (quoting *Howard v. Grinage*, 82 F.3d 1343, 1349 (6th Cir. 1996)).  Specifically, "[s]ubstantive due process 'prevents the government from engaging in conduct that shocks the conscience or interferes with rights implicit in the concept of ordered liberty.'" *Prater v. City of Burnside*, 289 F.3d 417, 431 (6th Cir. 2002) (quoting *United States v. Salerno*, 481 U.S. 739, 746 (1987)).  "Conduct shocks the conscience if it 'violates the decencies of civilized conduct.'" *Range v. Douglas*, 763 F.3d 573, 589 (6th Cir. 2014) (quoting *Cnty. of Sacramento v. Lewis*, 523 U.S. 833, 846–47 (1998)).

Here, the facts alleged in the complaint fall short of showing the sort of egregious conduct that would support a substantive due process claim.  *Cf. Cale v. Johnson*, 861 F.2d 943, 950 (6th Cir. 1988) (holding that framing an inmate by planting evidence may violate substantive due process where a defendant's conduct shocks the conscience and constitutes an "egregious abuse of governmental power"),

24

*overruled in other part by Thaddeus-X*, 175 F.3d at 388; *Davis v. Gallagher*, No. 1:16-cv-1405, 2016 WL 7403941, *4 (W.D. Mich. Dec. 22, 2016). Moreover, "[w]here a particular [a]mendment 'provides an explicit textual source of constitutional protection' against a particular sort of government behavior, 'that [a]mendment, not the more generalized notion of substantive due process, must be the guide for analyzing these claims.'" *Albright v. Oliver*, 510 U.S. 266, 273–75 (1994) (quoting *Graham v. Connor*, 490 U.S. 386, 394 (1989)) (holding that the Fourth Amendment, not substantive due process, provides the standard for analyzing claims involving unreasonable search or seizure of free citizens). If such an amendment exists, the substantive due process claim is properly dismissed. *See Heike v. Guevara*, 519 F. App'x 911, 923 (6th Cir. 2013). In this case, the First Amendment protects Plaintiff from any alleged retaliation by Defendants.

Accordingly, any intended Fourteenth Amendment substantive due process claims will be dismissed.

## Conclusion

The Court will grant Plaintiff leave to proceed *in forma pauperis* (ECF No. 2), and the Court will deny Plaintiff's "motion for order for advance" (ECF No. 10). Further, having conducted the review required by the PLRA, the Court determines that Defendant Kelley will be dismissed for failure to state a claim under 28 U.S.C. §§ 1915(e)(2) and 1915A(b), and 42 U.S.C. § 1997e(c). The Court will also dismiss, for failure to state a claim, the following claims against remaining Defendants Rykes, Wood, and Mahalic: (i) First Amendment retaliation claims set forth in Plaintiff's "Fourth Cause of Action," "Sixth Cause of Action," "Seventh Cause of Action," and

"Ninth Cause of Action;" (ii) Eighth Amendment verbal harassment claims; and (iii) Fourteenth Amendment procedural and substantive due process claims. Plaintiff's First Amendment retaliation claims as set forth in Plaintiff's "First Cause of Action," "Second Cause of Action," and "Third Cause of Action" against Defendants Rykes and Wood remain in the case. Additionally, Plaintiff's First Amendment retaliation claim as set forth in Plaintiff's "Eighth Cause of Action" against Defendant Mahalic remains in the case.

An order consistent with this opinion will be entered.


Dated:  January 2, 2025                    /s/ Phillip J. Green
                                           PHILLIP J. GREEN
                                           United States Magistrate Judge